**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 19-21760-CIV-DIMITROULEAS**

WILLIAM SOUTH, on behalf of himself and
all others similarly situated,

Plaintiff,
v.

PROGRESSIVE SELECT INSURANCE
COMPANY,

Defendant.

_____/

**CASE NO. 19-21761-CIV-DIMITROULEAS**

MICHAEL PARIS, as Personal Representative
of the Estate of HENRY PARIS, JR., deceased,
CHRISTIE HEGEL, and ROLANDO
HERNANDEZ, individually and on behalf of
all others similarly situated,

     Plaintiffs,

v.

PROGRESSIVE AMERICAN INSURANCE
COMPANY, and PROGRESSIVE SELECT
INSURANCE COMPANY

     Defendants.

_____/

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

       Plaintiffs, Michael Paris, Christie Hegel, Rolando Hernandez, and William South

("Plaintiffs"), in the above consolidated action,[1] on behalf of themselves and all others similarly

---

[1]  This Court previously consolidated *Paris et al. v. Progressive American Insurance Company,*
*et. al.*, No. 19-cv-21761 (S.D. Fla.) ("*Paris*") and *South v. Progressive Select Insurance Company*,

situated, submit this Unopposed Motion for Final Approval ("Final Approval Motion") of the proposed class action settlement with Defendants, Progressive American Insurance Company and Progressive Select Insurance Company (collectively "Progressive"), as memorialized in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), attached as ***Exhibit A***.[2]

## I.     **INTRODUCTION**

Plaintiffs file this Final Approval Motion requesting that the Court approve the proposed Settlement, certify the Settlement Class, find Notice sent to Settlement Class members satisfied due process requirements and was the best notice practicable, and enter a Final Order and Judgment. On January 16, 2023, Class Counsel filed the pending Unopposed Motion for Attorneys' Fees, Costs and Service Awards ("Fee Motion") (DE #249). A proposed Order Granting both the Fee Motion and Final Approval Motion is attached hereto as ***Exhibit B***.

The proposed Settlement is an excellent result following years of hard-fought litigation and three days of mediation and provides significant relief for the Settlement Class, including: (a) $38,000,000.00 in cash available for Settlement Class Members; (b) nearly $1,194,000.00 in costs and separately paid Settlement administration costs; and (c) prospective relief worth millions of dollars based on Plaintiffs' estimate. Notice was provided to over 300,000 Settlement Class members and not a single Settlement Class Member objected to the terms of the Settlement, including the request for attorneys' fees, costs, and Service Awards. Only five Settlement Class members timely opted-out.

### A. Background of the Claims and Litigation.

These cases allege that Progressive breached automobile insurance policies. *Paris* challenged Progressive's failure to include in Total Loss Claim Payments an amount for title and tag transfer fees. *Paris* also challenged Progressive's payment of sales tax calculated based on the amount that would be due upon purchase of a comparable vehicle ("ACV Sales Tax"). *South*

---

No. 19-cv-21760 (S.D. Fla.) ("*South*") for settlement purposes only and instructed the Parties to submit all filings in *South*.

[2] In granting preliminary approval, this Court necessarily found that it would "likely be able to approve" the proposed Settlement, but of course Notice was provided so that Settlement Class members would have the opportunity to object and point out any flaws not contemplated by the Parties nor addressed by the Court. Fed. R. Civ. P. 23(e)(1)(B)(1). Typically, in moving for final approval, the Parties would focus on responding to any objections from Settlement Class Members. Here, however, there are no objections. So, this Motion in some parts tracks the Motion for Preliminary Approval.

alleged that Progressive Select Insurance Company used an improper methodology for calculating the underlying value of Total Loss vehicles and failed to include title and tag transfer fees and dealer fees in Total Loss Claim Payments. See ***Exhibit C***, Declaration of Class Counsel Jacob Phillips ("Phillips Decl.") at ¶ 7.

Progressive's practice was to exclude transfer fees in Total-Loss Claim Payment. *Id*. In addition, for insureds who leased their Total Loss vehicle, Progressive, at most, only paid sales tax in the amount the insured paid as part of the lease payments. *Id*. at ¶ 12. Furthermore, if an insured retained the salvage Total Loss vehicle, Progressive's payment did not include sales tax at all. *Id*. As alleged in *South*, Progressive's practice was: (a) to exclude dealer fees as part of Total Loss Claim Payments; and (b) to calculate the underlying vehicle value via a third-party vendor, which took the adjusted price of comparable vehicles in the local market area, and then made adjustments based on differences in mileage, equipment, and condition. *Id*. at ¶ 13. In Plaintiffs' view, these facts were confirmed through discovery. *Id*. at ¶¶ 9-11, 14.

The proposed Settlement was achieved only after hotly contested and extensive litigation. Between *Paris* and *South*, the Parties took a total of fifteen depositions and retained six experts. Plaintiffs obtained and reviewed tens of thousands of documents from Progressive and third parties, including spreadsheet data for over 300,000 Policyholders with millions of data entries for the purpose of identifying Settlement Class members and calculating individual damages. *Id*. at ¶¶ 9-11, 14. Motion practice was extensive and included motions to dismiss, transfer, consolidate, stay, to compel the production of documents, two motions for class certification, cross-motions for summary judgment, multiple *Daubert* motions, and two petitions for interlocutory appeal. *Id*. at ¶¶ 15-20. Notice was initially provided to the members of the certified litigations classes. *Id*. at ¶ 16. Notice was also provided to the Settlement Class. *Id.*

### B. The Proposed Settlement.

#### 1. Settlement Class

The Settlement Class consists of:

All Florida policyholders who were insured (1) by Progressive for auto physical damage coverage for comprehensive or collision loss who suffered a first-party loss of a covered vehicle and made a claim (2) during the time period of (i) as to Progressive American, November 6, 2013 through November 15, 2022, or (ii) as to Progressive Select, September 18, 2013 through November 15, 2022, and (3) whose claims were adjusted by Progressive as a Total Loss and resulted in payment by Progressive of a covered claim during the Class Period.

Excluded from the Settlement Class are: (1) Progressive, all present or former officers, directors, employees or legal representatives the Neutral Evaluator, Class Counsel, and the Honorable Judge William P. Dimitrouleas and any member of his immediate family; (2) Claims for which Progressive received a valid and executed release; and (3) insureds who timely opt-out of the Settlement.

Agreement at ¶¶ I.rr.

### 2. Settlement Consideration

#### a. Monetary Compensation to the Settlement Class

The Settlement requires Progressive to pay up to $38,000,000.00 to Settlement Class Members who make a timely, complete, and valid claim. Specifically, Progressive will pay: (1) 100% of the ACV Sales Tax due in the action to those Settlement Class Members who were not paid any amount of sales tax (salvage-retained insureds) or were underpaid sales tax (leased-vehicle insureds) in the original Total Loss Claims Payment, and (2) $55.50, representing approximately 70% of all unpaid tag and title fees claimed in the action. Agreement at ¶¶ 32-34.

#### b. Prospective Relief

In addition to above monetary relief, Progressive agreed, moving forward, to change its Florida practices. It will now include in Total Loss Claim Payments an amount for sales tax calculated as the applicable state and local surtax percentages of the adjusted Total Loss vehicle value without condition. *Id*. at ¶ 68. This is a valuable benefit to the Settlement Class and future insureds and was one of Plaintiffs' main motivations for initiating this action. By Plaintiffs' estimation, this practice change is conservatively anticipated to save insureds about $187,500.00 per month or $2,250,000.00 per year. Phillips Decl. at ¶ 28.

#### c. Reimbursement of Costs

Progressive, following the Court's approval, agrees to separately reimburse Class Counsel $480,000.00 in litigation costs incurred by Class Counsel through the date of Settlement. Furthermore, Progressive agreed to separately pay for all Settlement administration costs from the time of settlement forward, estimated to be $714,000.00. This $1,194,000.00 in costs does not impact the amounts payable to the Settlement Class Members, a tremendous Settlement benefit.

#### d. Service Awards

Progressive, subject to the Court's approval, agrees to separately pay up to $10,000.00 in Service Awards to each of the Class Representatives for their contribution to the actions, including, but not limited to filing the action, sitting for depositions, assisting with discovery, reviewing the

Agreement, and for the overall risks they took in being the named Plaintiffs. Payment of the Service Awards, as with payment of the litigation costs, will not impact the amounts Settlement Class Members will receive.

### e.  Attorneys' Fees

Progressive, subject to the Court's approval, agrees to separately pay attorneys' fees to Class Counsel in an amount up to $10,000,000.00. Again, as with the litigation costs and the Service Awards, payment will not impact the amounts that Settlement Class Members will receive.

### f.  Value of the Settlement Benefits

The cash, costs, attorneys' fees, and future monetary savings from the practice change conservatively total $51,444,000.00[3] in Settlement benefits to the Settlement Class as a direct result of this litigation. The benefits in their totality should be considered when determining the fairness and reasonableness of the Settlement and Class Counsel's request for attorney's fees and costs. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) ("The Total Benefit to the class includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up); *See also Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at **10-11 (S.D. Fla. Nov. 20, 2017) (court considers benefit to class as maximum settlement cash fund value and prospective relief when applying federal benchmark of 20-30%).

### g.  Release of Claims

In consideration for the Settlement, the Releasing Parties, which includes the named Plaintiffs and all members of the Settlement Class who did not timely opt-out of the Settlement, shall release their Released Claims in favor of the Released Parties as per the terms of the Agreement. *See* Agreement at ¶¶ I.jj.-ll and 65-66.

### h.  Notice Plan

Notice to the Settlement Class was provided as approved in the Preliminary Approval Order. See Declaration of Settlement Administrator, attached as ***Exhibit D*** ("Admin. Decl.). The Notice was comprehensive and well-suited to reach the Settlement Class. *Id*. at ¶ 21. The Settlement Administrator initiated two separate direct mail notices. *Id*. at ¶¶ 22-26. Both mailed notices included simple, easy-to-understand, detachable Claim Forms with prepaid return postage. *Id.* at ¶¶ 23-26 and Attachment 3 thereto. On December 30, 2022, a total of 317,740 Postcard

---

[3] According to Class Counsel, this includes $2,250,000.00 for future monetary relief valued at a single year.

Notices were sent to Settlement Class members. On January 31, 2023, an additional 288,762 Postcard Notices were sent as a reminder to submit Claim Forms. *Id*. at ¶¶ 22, 30.

In addition to the two mailed notices, the Settlement Administrator initiated two separate Email Notices that allowed Settlement Class members to "click through" to the Settlement website to submit a claim. *Id*. at ¶¶ 27-28 and Attachment 6 thereto. On December 30, 2022, 221,516 Email Notices were sent to Settlement Class members. On January 13, 2023, 167,173 reminder Email Notices were sent. *Id*. at ¶¶ 27,30. In the Postcard and Email Notices, Settlement Class members were informed of their rights to opt-out of the Settlement Class or object to the Settlement. *Id.* at ¶¶ 20-24; *see Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence settlement terms are fair and reasonable).

As of March 9, 2023, a Postcard Notice and/or Email Notice was sent to 309,750 members of the Settlement Class, meaning direct notice efforts reached 97% of the identified Settlement Class members. Admin. Decl. at ¶ 29.

On December 15, 2022, the Settlement Administrator established a Settlement Website (www.parissouthtotallossclassaction.com) for Settlement Class members to obtain all relevant Settlement information, along with links to important documents, including the Settlement Agreement, Long Form Notice and Claim Form. *Id*. at ¶ 31. That same day, the Settlement Administrator activated a 24-hour, 7 day per week, toll-free information line (855.680.3839) for Settlement Class members to call and hear automated information about the Settlement. *Id*. at ¶ 32. As of March 9, 2023, the line received 3,541 calls representing 10,218 minutes of use. *Id.* The Motion for Attorneys' Fees, Costs, and Service Awards was posted on the Settlement Website.

The Notice Plan complied with the due process considerations under the Florida and United States Constitution, federal rules and statutes, and case law pertaining to the Federal Rule of Civil Procedure 23 standards. *Id.* at ¶¶ 36-40. The Notice Plan was the best notice practicable under the circumstances for this case. *Id*. There were no objections to the Settlement and five timely requests for exclusion. Admin. Decl. at ¶ 34. Thus, the Settlement Class overwhelming supports Final Approval.

### i. Claims Procedure

The claims process for Settlement Class Members to obtain their Settlement benefits is simple and designed to maximize the number of claims made. Pursuant to the Notice Plan, Settlement Class members were sent Notice by postcards that contained a detachable, postage

prepaid Claim Form. Emails were also sent to Settlement Class members directing them to the Settlement Website to submit a Claim Form. Whether in hard copy or online, all Claim Forms were prepopulated with information Progressive extracted from their records. This was done to minimize Settlement Class Members' time and effort to complete the Claim Form which was designed to increase the probability that the claims would be submitted. *See* Settlement Agreement at Exhibits 2, 8 (showing data pre-filled Claim Forms). The Claim Form only requires Settlement Class Members to sign their name attesting that the information is correct to the best of their knowledge, and affirming that they were a Progressive insured who, to the best of their knowledge, suffered a Total Loss during the Settlement Class Period and did not receive the full ACV sales tax, title fees, and/or tag transfer fees. Phillips. Decl. at ¶ 29-30. Members of the Settlement Class also could access a pre-filled electronic Claim Form on the website by providing a claim ID (which was provided in all Postcard and Email Notices) to submit their claims electronically.

In sum, the Claim Form ensures Settlement Class Members will receive payment of an easily calculated amount from the Progressive entity with whom the Settlement Class Member would be familiar and quickly recognize.

Notice was robust and the claims process was straightforward, confirmed by the results. As of March 14, 2023, 78,175 Settlement Class Members submitted claims, which is a claims rate of nearly 25%. Admin. Decl. at ¶ 35. The claim deadline is May 1, 2023, and Class Counsel believes the claims rate will increase to 30% or higher by that date, subject to any further review of submitted claims for timeliness, completeness, and validity.

This claims rate is significantly higher than the overwhelming majority of similarly-structured settlements approved by federal courts throughout the country. *See* Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, Federal Trade Commission, September 2019, at 11, https://www.ftc.gov/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns (median claims rate is 9% and weighted mean (cases weighted by the number of notice recipients) is 4%); *see also, e.g., Poertner v. Gillette Co.*, 618 Fed. App'x 624, 625-626 (11th Cir. 2015) (approving settlement with claims rate of less than 1%); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 944-45 (9th Cir. 2015) (approving settlement with claims rate of less than 4%); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of approximately 1.1%).

Claims-made settlements are regularly approved by courts in this Circuit. *See, e.g., Faught*

*v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011); *Roth v. Geico Gen. Ins. Co.*, No. 16-cv-62942WPD, 2021 U.S. Dist. LEXIS 23105 (S.D. Fla. Feb. 8, 2021); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014); *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (similar claims-made settlement in total-loss vehicle class action); *Bd. of Trs. of Lake Worth Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2012 WL 12906569 (M.D. Fla. July 30, 2012); *Poertner v. Gillette Co.*, 618 Fed. App'x 624 (11th Cir. 2015); *Cook, v. Government Employees Insurance Company, et. al.*, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (granting similar claims-made settlement involving unpaid tag and title transfer claims).

## II.   MEMORANDUM OF LEGAL AUTHORITY

### A. Final Resolution Eliminates the Risk of Complete Reversal of the Plaintiffs' and Settlement Class Members' Successful Judgments and Damages by the Eleventh Circuit.

This Settlement provides outstanding benefits to Settlement Class Members for claims for which there is presently mixed authority.  If the actions were to proceed through final judgment in this Court, and then an appeal to the Eleventh Circuit, both sides would bear considerable risk. The Settlement Class would bear the risk of recovering nothing if class certification were reversed on appeal, or if the summary judgments for tag and title fees and ACV Sales Tax were overturned on appeal. Progressive would bear the risk of having to pay the full value of the Settlement Class Members' claims, in addition to substantial interest and attorneys' fees and costs, if the Eleventh Circuit affirmed.

Plaintiffs alleging similar claims in cases against other insurers before this Court, and in a case before Judge Byron of the Middle District of Florida, also secured summary judgment and class certification. *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-Orl-40KRS (M.D. Fla.), (pending before the Eleventh Circuit). Plaintiffs and the Settlement Class, thus, bear the risk that an Eleventh Circuit opinion overturning the district court's rulings in *Sos*—whether on class certification or summary judgment—would make their cases far less likely to succeed. Phillips Decl.  at ¶¶ 21-23. Moreover, several courts have rejected similar claims. For example, the court in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), granted the insurance company's motion to dismiss title and license transfer fees claims.

Similarly, in *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020), the Seventh Circuit affirmed the dismissal of claims against GEICO for sales tax and title and tag transfer fees. If the Eleventh Circuit accepted the Seventh Circuit's grounds for reversal that could result in reversal of the *Paris* and *South* summary judgment rulings. In addition, the Fifth Circuit recently affirmed denial of similar claims against another insurer. *See Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020).

As to Progressive's policy language specifically, several courts have held that ACV does not include sales tax and/or title and registration fees, including one court addressing Florida law and the policy language at issue in these actions. *See, e.g.*, *Pieczonka v. Progressive Select Ins. Co.*, 840 Fed. App'x 856 (6th Cir. 2021) (under Florida law, actual cash value as used in Progressive's policy does not include title or registration fees); *Davis v. Progressive Advanced Ins. Co.*, 2021 WL 534463 (E.D. Pa. Feb. 12, 2021) (same, under Pennsylvania law); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867 (W.D. Wis. 2019) (same, under Wisconsin law). Plaintiffs believe these cases were wrongly decided or are distinguishable because, for example, some of them involve materially different state laws and/or policy language. Even so, these cases illustrate the risks of proceeding with this matter on appeal to the Eleventh Circuit and demonstrate the outcome of an appeal is uncertain. This risk strongly supports the proposed Settlement in which Progressive agreed to pay 100% of the alleged sales tax damages and Fees of $55.50 (equal to nearly 70% of title and tag fee damages) to all Settlement Class Members who submit a timely, complete, and valid claim. Phillips Decl. at ¶¶ 13-19.

**B. Certification of the Settlement Class Is Warranted.**

Before granting final approval of a settlement, a class must first be certified under Fed. R. Civ. P. 23(a) and one of the Rule 23(b) subsections. As explained in the Motion for Preliminary Approval, in amending Rule 23 in 2018, the Advisory Committee clarified that when considering a proposed Settlement Agreement for members of a class already certified by a court, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." *See* Fed. R. Civ. P. 23(e)(1)(B), Committee Notes on Rules—2018 Amendment. There are no material differences between the certified litigation classes in *Paris* and *South* and the Settlement Class in the now consolidated action, other than the relevant Class Period. As such, certification is

9

appropriate as to the proposed Settlement Class.[4]

### C. Final Approval Is Warranted.

#### 1. Legal Standard.

Consistent with the Eleventh Circuit's strong preference for class settlements, a court should approve a class action settlement under Rule 23 if it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented, the settlement was negotiated at arm's length, and if the relief provided is adequate, accounting for factors such as the risk of litigation, method for processing class members' claims, and agreements concerning attorneys' fees. Fed. R. Civ. P. 23(e)(2). In the Eleventh Circuit, the Rule 23(e) analysis takes into account *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), which outlined factors relevant to determining whether a settlement is fair and reasonable:[5]

> Specifically, the court made findings of fact that there was no fraud or collusion in arriving at the settlement and that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id*. at 986. A court's determination concerning whether to approve a settlement as fair, adequate, and reasonable is discretionary. *Id*. at 987.

#### 2. The Procedural Requirements for Final Approval are Satisfied.

Rule 23(e)(2)'s procedural requirements and *Bennett* – i.e., lack of collusion, arm's length negotiations, and adequate representation – are satisfied here.[6] First, there was no fraud or

---

[4] Progressive stipulates to certification for settlement purposes only (without prejudice to their rights to appeal the previously certified classes in the event the Settlement is not approved).

[5] At the time *Bennett* was decided and set forth the standard for whether settlement agreements are "fair, reasonable, and adequate," there were no textual factors from Rule 23(e) guiding the analysis. In 2018, the Rule was amended to add the referenced textual factors.

[6] According to the Advisory Committee, the 2018 amendments to Rule 23(e)(2) can be categorized as "procedural factors" and "substantive factors." *See* Fed. R. Civ. P. 23(e)(2), Committee Notes on Rules - 2018 Amendment. The "procedural" factors are 23(e)(2)(A)-(B) (adequate representation and arms-length negotiations), while the "substantive factors" are (c)(i)-(iv). *Id*.

collusion in the Settlement, and the lengthy negotiations were conducted at arm's length with assistance of an experienced and well-respected mediator. Declaration of Michael Ungar attached as **Exhibit E**.; *see also, e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002) (where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion); McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Moreover, the Settlement occurred only after years of extensive, hotly-contested litigation with class certification and summary judgment have been granted to the certified litigation classes, a strong indication of no collusion. *See, e.g.*, *Diaz v. Hillsborough County Hosp. Auth.*, 2000 WL 1682918, at *6 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion); *Roth v. Geico Gen. Ins. Co.*, No. 16-cv-62942WPD, 2021 U.S. Dist. LEXIS 23105 (S.D. Fla. Feb. 8, 2021) (finding arms-length nature of settlement was supported by the fact that "this Court [] directly observed the contested nature of this litigation[,]" noting that "[t]he Parties comprehensively disputed and litigated numerous issues of fact and law in motions and other practice at every stage of this litigation, and they thoroughly developed the factual disputes and legal questions at issue").

Second, the class was adequately represented by the Class Representatives and Class Counsel. Fed. R. Civ. P. 23(e)(2)(A). This requirement – distinct from the Rule 23(a)(4) "adequacy" requirement– was added in 2018 and, as one court explained, addresses "whether class counsel and plaintiffs had an adequate information base before negotiating and entering into the settlement." *Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *7 (S.D. Fla. Sep. 6, 2019) (internal quotations omitted). This overlaps with the preexisting *Bennett* "stage of proceedings" factor. *See, e.g.*, *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18 ("The Court agrees… that the Rule 23(e)(2)(B) 'adequacy' requirement overlaps with the preexisting *Bennett* 'stage of proceedings' factor."); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("stage of proceedings" requirement ensures plaintiffs have sufficient information to evaluate the merits of the case and weigh the benefits of settlement versus further litigation.).

Here, the record clearly demonstrates the named Plaintiffs and Class Counsel possessed an

adequate information base to evaluate the merits of the cases such that the Settlement Class was adequately represented. Settlement was achieved at an advanced stage of litigation, following extensive briefing and litigation of numerous discovery, class certification, and summary judgment issues. *See* Phillips Decl. at ¶¶ 9-20, 37. Through lengthy and hard-fought discovery, named Plaintiffs and Class Counsel secured voluminous discovery and data, conducted numerous corporate and third-party depositions, and became well-versed in the information necessary to evaluate the merits of the complicated issues presented in this litigation, and to assess the benefits of settling versus the risks of further litigation. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at **18-19 (adequacy requirement "clearly" met where settlement was achieved after "voluminous discovery and data and . . . numerous depositions" and after "numerous contested issues of class certification, discovery, and summary judgment were extensively briefed and litigated.") (citing *Grant v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 14673, at **14-15 (M.D. Fla. Jan. 29, 2019)). Accordingly, the Rule 23(e)(2)(A) prerequisites are satisfied.

### 3. The Rule 23(e)(2)(C) Substantive Factors Favor Approval.

The substantive Rule 23(e)(2)(C) factors addressing whether a settlement's terms are "adequate" – i.e., the risk of non-settlement, the method for processing claims and distributing relief, and the terms of attorneys' fees – favor granting final approval of the Settlement. In amending Rule 23(e)(2) in 2018, the Advisory Committee clarified that while it did not intend to "displace" various circuit's laws – *Bennett* in the Eleventh Circuit – it did intend to "focus the court and the lawyers on the core" or "central concerns" of Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2)(C), Committee Notes on Rules - 2018 Amendment.

The first factor is the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor is analogous to the first four *Bennett* factors (*i.e.*, (1) likelihood of success, (2) range of potential recovery, (3) where on the range of potential recovery at trial the amount provided to class members by the settlement falls, and (4) duration and length of litigation). *See Williams v. New Penn Fin., LLC*, 2019 WL 2526717, at *4 (M.D. Fla. May 8, 2019); *Roth*, 2021 U.S. Dist. LEXIS 23105, at *22. Thus, under both Rule 23(e)(2)(C)(i) and *Bennett*, the question is not necessarily the amount of relief in a vacuum, but "whether that relief is reasonable when compared with the relief 'plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing.'" *Burrow*, 2019 WL 4247284, at *9 (citations omitted). "[C]ourts should estimate the potential recovery if ultimately successful versus the risks of losing

outright, and determine whether the relief provided comports therewith." *Roth*, 2021 U.S. Dist. LEXIS 23105, at *22 (quoting *Cook*, 2020 U.S. Dist. LEXIS 111956, at *20); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("courts may need to forecast the likely range of possible class wide recoveries and the likelihood of success in obtaining such results") (quotations omitted).

Here, analysis of Rule 23(e)(2)(C)(i), consistent with the *Bennett* factors, favors Final Approval. First, the range of potential recovery is easily determinable. As for Sales Tax, the Settlement Agreement provides 100% of the recoverable damages. It goes without saying that this is extraordinarily favorable. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *2 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"). As for transfer fees, the highest potential damages is $79.75 to each member of the certified litigation classes, meaning  the $55.50 per member recovery represents approximately 70% of the highest potential damages for the claims that survived Progressive's summary judgment motions. Phillips Decl. at ¶ 35. This is also eminently reasonable given the probability of success. As Progressive pointed out in its briefing, and as noted above, courts analyzing Progressive's exact policy language have held that sales tax and/or tag and title fees are not covered. *See Pieczonka*, 840 Fed. App'x 856; *Davis*, 2021 WL 534463; *Thompson*, 420 F. Supp. 3d 867. Certainly, securing 69.5% of potential damages is far more favorable than percentages other courts have found to be fair and adequate. *Bennett*, 737 F.2d at 987 n.9 (approved settlement providing 5.6% of the potential recoverable damages); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2018 WL 4003286, at *6 (N.D. Cal. Aug. 22, 2018) (11.2% of potential damages for class members is sufficient given risks of litigation); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3rd Cir. 2011) (affirming settlement for "[as little as] 10.93%" of the damages recoverable at trial).

Moreover, Progressive agreed in the Settlement to change their business practice and begin paying full sales tax to all total loss insureds moving forward (and has already begun doing so), irrespective of whether the insured vehicle was leased or owned or whether the insured retains the salvage vehicle. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (analysis of potential recovery and benefits secured "spans from a finding of non-liability" to "varying levels of injunctive relief" to monetary benefits).

This analysis is buttressed by the risk of no recovery at all if there was an appeal.  The legal

issues presented as to both class certification and the merits of the insurance policy dispute are complex, and the parties have undergone great expense and will continue to do so if litigation were to continue through appeal and remand. Moreover, the outcome of this case has been uncertain from the outset. Should Progressive prevail in an appeal, it will reverse or prevent all relief for the previously certified litigation classes and for the Settlement Class. Moreover, as set forth above, some courts have found sales tax and/or title and tag fees are not owed under ACV policies. Particularly given the split of authority on the question central to this case, there is significant risk the Eleventh Circuit could disagree with this Court's holdings, which supports the fairness and adequacy of the proposed Settlement.

The second factor is the method for "distributing relief" and "processing class-members claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The above described extremely straightforward claims process means this factor favors Final Approval. Progressive extracted information from its records to pre-fill the Claim Forms with the name, address, and the date of loss, and Settlement Class Members were required merely to attest that the prefilled information was correct (and update their address in the event they had moved). *See* Settlement Agreement at Exhibits 2 and 8; *see also Cook*, 2020 U.S. Dist. LEXIS 111956, at *22-23 (similar method for claim processing weighed in favor of approval because it was simple, streamlined, and straightforward) (citing *Wilson v. Everbank*,  2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (finding significant that claim process "should take no more than a few minutes for the average claimant to complete")). In *Roth*, this Court characterized an identical claim process as "simple and straightforward" and found that it supported the fairness of the settlement. 2021 U.S. Dist. LEXIS 23105, at *25.

Notably, the well-established Eleventh Circuit law is that a claims-made settlement "does not undermine the fairness or adequacy" of a settlement. *Id.* at *23; *see also, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Poertner*, 618 Fed. App'x at 625-26 (confirming approval of class settlement with less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (a "claims-made structure does not impact the fairness, reasonableness, or adequacy of proposed settlement.") (quotations omitted). As this Court has previously explained, "[n]egotiating for a smaller amount to go to Class Members would . . . unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger

amount." *Roth*, 2021 U.S. Dist. LEXIS 23105, at \*26 (quoting *Lee*, 2015 WL 5449813, at \*18).

Critically, Progressive confirmed this litigation would not be settled absent the claims-made structure. A defendant's refusal to settle absent a claims-made structure to be an important factor in determining whether the settlement is fair and reasonable. *See, e.g.*, *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at \*14 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure); *Casey v. Citibank, N.A.*, 2014 WL 4120599, at \*2 (N.D.N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant"). The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the settlement is fair and reasonable on its own terms. *See Casey*, 2014 WL 4120599, at \*3 ("[The] Court does not have the authority to impose a preferred payment structure upon the settling parties").

Plaintiffs were presented with a choice between: (a) not settling, so that the named Plaintiffs' and Settlement Class Members' recovery would be subject to the risk of reversal on appeal, resulting in no recovery; or (b) settling, and guaranteeing a significant recovery for each and every Settlement Class Member who made a timely, complete, and valid claim. Given the extremely robust Notice—four separate instances of sending individualized Notice accompanying a prefilled claim form as well as a website—and simple claim process, Plaintiffs submit that the Settlement is fair, reasonable and adequate.

The next factor is the "terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis.[7] By contrast, under Rule 23(e), the analysis is not of the fee amount in a vacuum, but rather whether attorneys' fees impacted the other settlement terms. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at \*24 (explaining that Rule 23(e) analysis is "distinct from the Rule 23(h) analysis" and "addresses if and how the attorneys' fees impacted the terms of the Settlement."). To gauge the Settlement's adequacy and reasonableness, it is critical that: (a) whatever amount is

---

[7] *See* Motion for Attorneys' Fee, Costs and Service Awards addressing the Rule 23(h) analysis, which is currently pending in front of Magistrate Judge Jacqueline Becerra for a Report & Recommendation. DE #249. Settlement Class Members were provided Notice of the attorneys' fee and cost reimbursement requests and not a single one objected to the amounts sought.

awarded will be paid separately by Progressive and will not reduce nor have any impact whatsoever on the benefits recovered by Settlement Class Members; and (b) payment to Settlement Class Members is not conditioned on the Court awarding of attorneys' fees. *See Burrow*, 2019 WL 4247284, at *9 (evaluating Rule 23(e)(2)(C)(iii) and noting that "attorneys' fees. . . are to be paid by the Defendants separately and in addition to the relief granted to the Settlement Class Members" and "the relief available to Settlement Class Members was not conditioned on any amount of attorneys' fees being awarded by the Court"); *Williams*, 2019 WL 2526717, at *6 (same). That Settlement Class Members will get relief irrespective of any attorneys' fees award and that awarded attorneys' fees will have no impact on the Settlement Class Members' benefits demonstrates that the terms of the proposed award of attorneys' fees weighs in favor of finding the Settlement to be adequate and reasonable.

The final substantive factor is whether the Settlement treats class members equitably vis-a-vis each other. Fed. R. Civ. P. 23(e)(2)(D). Here, each Settlement Class Member is treated equitably. Each received the same Notice, the same pre-filled prepaid Claim Form, and the same measure of damages. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at *24 (Rule 23(e)(2)(D) favored settlement because "Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and all other material ways."). Moreover, the release is the same for all Settlement Class Members and is narrowly tailored to the specific claims for which Progressive is providing relief. *See* Rule 23(e)(2)(D), Committee Notes on Rules - 2018 Amendment (courts to consider the extent to which "the scope of the release may affect class members in different ways"). This fact also favors Final Approval.

### 4.   The Remaining *Bennett* Factors Favor Settlement.

The two remaining *Bennett* factors not subsumed within Rule 23—opposition to the Settlement, and the opinions of the Class Representatives and Class Counsel—also favor the Settlement. First, out of the over 318,000 Class Members, not a single one objected and only five Settlement Class members timely opted-out. Admin. Decl. at ¶ 34. These numbers strongly indicate the Settlement terms are fair, adequate, and reasonable. *See Saccoccio v. J.P. Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("[L]ow resistance to the settlement [through opt-outs and objections] . . . weighs in favor of approving the settlement."); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1251-52 (S.D. Fla. 2016) (one objection out of thousands of class members indicates strong satisfaction with settlement); *Burrow*, 2019 WL 4247284, at

*10 (eleven opt-outs strong evidence in favor of final approval). As such, the amount of opposition to the proposed Settlement—namely, none—strongly counsels in favor of approval. *See Roth*, 2021 U.S. Dist. LEXIS 23105, at *29 (lack of even a single objection "strongly support[s] the fairness, adequacy, and reasonableness of the Settlement Agreement.").

Second, Class Counsel and the Class Representatives support the Settlement approval. It is the reasoned opinion of Class Counsel, experienced in complex class action litigation, and the Class Representatives that the Settlement is in the interest of the previously certified classes and the Settlement Class given the future litigation risks. Phillips Decl. at ¶¶ 35-38. Plaintiffs and Class Counsel have also determined the Settlement's terms and conditions are fair, adequate, and reasonable—a factor that is particularly significant here given Class Counsel's wealth of experience in litigating total-loss class actions. *See, e.g.*, *Montoya*, 2016 WL 1529902, at *15 (opinions of Class Counsel weigh in favor of granting approval of claims-made settlement given Class Counsel had litigated numerous similar actions and became "thoroughly familiar with the major mortgage lenders' force-placed insurance practices, as well as the claims and legal theories advanced in these cases."); *Greco v. Ginn Dev. Co., LLC*, 635 Fed. App'x 628, 632 (11th Cir. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel")). Likewise, the Class Representatives agree the certainty of settlement at 100% of damages in ACV Sales Tax and nearly 70% of damages for title and registration fees, along with the prospective relief to Florida insureds from Progressive's changed business practice, significantly outweighs the risk of continued litigation. As explained above, several courts addressing materially identical claims under Progressive's exact Policy language have held that ACV does not include sales tax and/or title and tag fees. The putative class members in those actions recovered nothing. Here, the Settlement provides great relief to the Settlement Class. For the reasons set forth herein, Plaintiffs respectfully submit that the proposed Settlement is eminently fair, reasonable and adequate.

### III.   CONCLUSION

Plaintiffs and Class Counsel respectfully request that the Court enter a Final Order and Judgement approving the Settlement as follows:

1.    Certifying the Settlement Class for settlement purposes only;

2.    Finding the terms of the Settlement are fair, reasonable, and adequate to the

Settlement Class Members;

3. Appointing named Plaintiffs as Class Representatives;

4. Reaffirming previously appointed counsel in the Preliminary Approval Order as Class Counsel;

5. Finding that Notice set forth in the Agreement (i) constituted the best practicable Notice under the circumstances; (ii) was reasonably calculated to apprise potential Settlement Class members of the pendency of the actions, their right to object to or exclude themselves from the Settlement, and to appear at the Final Approval Hearing; and (iii) constituted due, adequate, and sufficient process and notice to all Persons entitled to receive notice;

6. Finding that the Class Action Fairness Act Notice provided by the Settlement Administrator on behalf of Progressive complied with 28 U.S.C. § 1715(b);

7. Approving the proposed Settlement and directing Class Counsel, Plaintiffs and Progressive to implement and consummate the Settlement Agreement pursuant to its terms and conditions;

8. Finding that the Opt-Out List is a complete list of all members of the Settlement Class who have timely opted-out of the Settlement Class and, accordingly, neither share in nor are bound by the Final Order and Judgment;

9. Reaffirming Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator;

10. Approving the Claims Process outlined in the Settlement Agreement;

11. Approving of the separate payment by Progressive of Service Awards to Class Representatives in the amount of $10,000.00 each;

12. Approving of the separate payment by Progressive of $10,000,000.00 in attorneys' fees to Class Counsel;

13. Approving of the separate payment by Progressive of $480,000.00 in costs to Class Counsel; and

14. Providing that the named Plaintiffs, all Settlement Class Members, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, attorneys, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless

of whether they have submitted a Claim Form or Electronic Claim Form, and regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released all Released Claims against Defendants and the Released Persons, and are bound by the provisions of this Final Judgment and Order;

15. Dismissing all claims in the Action on the merits and with prejudice, and without fees or costs except as provided herein;

16. Entering Final Judgment, retaining jurisdiction over the Parties, Settlement Class Members, and Progressive to implement, administer, consummate, and enforce the Settlement and this Final Order and Judgment.

**Certificate of Conferral**

Pursuant to S.D Fla. L.R. 7.1, Class Counsel hereby certifies that Class Counsel has conferred with counsel for the Defendants concerning the relief sought in this Motion. While Defendants do not necessarily join in the substantive argument contained in the Motion and therefore this is not a joint motion, Defendants do not oppose the relief sought in the Motion provided that it comports with the terms of the Settlement. Therefore, in terms of the ultimate relief sought, the Motion is unopposed.

Dated: March 16, 2023.   Respectfully submitted,

/s/ Jeff Ostrow
Jeff Ostrow (FBN 12452)
Jonathan M. Streisfeld (FBN 117447)
**Kopelowitz Ostrow P.A.**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jacob Phillips (FBN 0120130)
Edmund A. Normand (FBN 0865590)
**Normand PLLC**
3165 McCrory Place, Suite 175
Orlando, Florida 32803
Tel: (407) 603-6031

Fax: (888) 974-2175
ed@normandpllc.com
jacob.phillips@normandpllc.com
service@normandpllc.com

Andrew J. Shamis (FBN 101754)
**Shamis & Gentile, P.A.**
14 N.E. 1st Avenue, Suite 1205
Miami, Florida   33132
Tel: (305) 479-2299
Fax: (786) 623-0915
ashamis@shamisgentile.com

Scott Edelsberg (FBN 100537)
**Edelsberg Law, P.A.**
19495 Biscayne Boulevard, Suite 607
Aventura, Florida   33180
Tel: (305) 975-3320
scott@edelsberglaw.com

Christopher Lynch (FBN 331041)
**Christopher J. Lynch, P.A.**
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Tel: (305) 443-6200
Fax: (305) 443-6204
clynch@hunterlynchlaw.com

*Counsel for Plaintiffs Michael Paris, as
Personal Representative for the Estate of
Henry Paris, Jr., Christie Hegel, and
Rolando Hernandez and the Settlement Class*

Roger L. Mandel (admitted *pro hac vice*)
**Jeeves Mandel Law Group**
2833 Crockett Street, Suite 135
Fort Worth, TX 76107
Tele: (214) 253-8300
rmandel@jeevesmandellawgroup.com

Scott R. Jeeves (FBN 0905630)
**The Jeeves Law Group, P.A**.
954 First Avenue North
St. Petersburg, FL 33705
Tel: (727) 894-2929
sjeeves@jeeveslawgroup.com

Craig E. Rothburd (FBN 49182)
**Craig E. Rothburd, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Tel: (813) 251-8800
craig@rothburdpa.com

Casim Adam Neff (FBN 94030)
**Neff Insurance Law, PLLC**
P.O. Box 15063
St. Petersburg, FL 33733-5063
Tel: (727) 342-0617
cneff@neffinsurancelaw.com

Edward H. Zebersky (FBN 0908370)
Mark S. Fistos, (FBN 909191)
**Zebersky Payne, LLP**
110 S.E. 6th Street, Suite 210
Ft. Lauderdale, FL 33301
Tel: (954) 989-6333
ezebersky@zpllp.com
mfistos@zpllp.com

Alec H. Schultz (FBN 35022)
Carly A. Kliger (FBN 83980)
**Hilgers Graben PLLC**
1221 Brickell Avenue, Suite 900
Miami, FL 33131
Tel: (305) 630-8304
aschultz@hilgersgraben.com

Stephen B. Murray, Jr. (admitted *pro hac vice*)
**Murray Law Firm**
Suite 2150 Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: 504-525-8100
smurrayjr@murray-lawfirm.com

*Counsel for Plaintiff William South
and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using CM/ECF system this 16th day of March, 2023.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jeff Ostrow*
Jeff Ostrow