UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-21760-WPD/Becerra

WILLIAM SOUTH, on behalf of himself and
all others similarly situated,

    Plaintiff,

v.

PROGRESSIVE SELECT INSURANCE
COMPANY,

    Defendant.
_____/

CASE NO.: 19-cv-21761-WPD/Becerra

MICHAEL PARIS, as Personal Representative
of the Estate of HENRY PARIS, JR., deceased,
CHRISTIE HEGEL, and ROLANDO
HERNANDEZ, individually and on behalf of
all others similarly situated,

    Plaintiffs,

v.

PROGRESSIVE AMERICAN INSURANCE
COMPANY, and PROGRESSIVE SELECT
INSURANCE COMPANY,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON UNOPPOSED MOTION
FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

**THIS CAUSE** came before the Court on the Unopposed Motion of Plaintiffs Michael Paris, Christie Hegel, Rolando Hernandez and William South's ("Plaintiffs"), individually and on behalf of the Settlement Class, for Attorneys' Fees, Costs, and Services Awards. ECF No. [249].

1

The Honorable William P. Dimitrouleas referred the Motion to the undersigned for a report and recommendation.  ECF No. [250].  No response to the Motion has been filed, nor have any objections to the proposed settlement been made.  In addition, Plaintiffs submitted invoices to support their request for costs as set forth in the Motion, and submitted copies of Class Counsel's billing records to the Court for *in camera* review.  After careful consideration of the Motion, the supporting documentation that Plaintiffs submitted, the pertinent portions of the record, and the applicable law, it is **RECOMMENDED** that Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, Services Awards, ECF No. [249], be **GRANTED**.

I.     BACKGROUND

Plaintiffs brought suit against Progressive for breach of contract and, in the *South* action, declaratory judgment, based on Progressive's alleged failure to include sales tax, transfer fees, and/or registration fees in total-loss payments made to its insureds as part of the actual cash value of totaled vehicles (the "Total Loss Claim Payments").  The Parties propose a settlement of both the *Paris* and *South* actions (the "Settlement Agreement") which requires Progressive to (1) make payment to all Settlement Class Members who submit valid claims in an amount of $55.50; and (2) for those Settlement Class Members who were not paid any amount of sales tax (salvage-retained insureds) or were underpaid sales tax (leased vehicle insureds), make payment for sales tax calculated as 6% (and any applicable local surtax) of the adjusted Total Loss vehicle value, offset by payments for sales tax, if any, in the original total-loss payment. ECF No. [247-2] at ¶¶ 32-34.  Progressive further agreed to change its practice in Florida so that it will now include an amount for sales tax, calculated as the applicable state and local percentage of the adjusted Total Loss vehicle value without condition, in its Total Loss Claim Payments.  *Id*. at ¶ 68.

The Settlement Agreement also provides that Progressive agrees to pay up to $10 million

in attorneys' fees, up to $480,000.00 in costs and expenses, and up to $10,000.00 in service awards to each of the Named Plaintiffs. *See* ECF No. [247-1] at ¶ 45. The Settlement Agreement provides that Progressive will pay attorneys' fees, costs, and the service awards separate from the payments available to Settlement Class Members, such that those payment will not reduce the amount available to Plaintiffs. *Id*.

Plaintiffs calculate the total value of the Settlement to be $48.48 million comprised of: (1) approximately $38 million in cash available to claimants, *see* ECF No. [247-1] at ¶ 31; (2) $10 million in attorneys' fees; and (3) $480,000.00 in costs, *id* at ¶ 45. This figure does not include the value of prospective relief from Progressive's changes to its business practices, which Plaintiffs calculate to be approximately $2.25 million per year. *See* ECF No. [249-1] at ¶ 28. The requested attorneys' fees represent approximately 20.6% of the total benefit to the class.

## II.    ANALYSIS

As mentioned, Plaintiffs seek an attorneys' fees award of $10 million, costs and expenses in the amount of $480,000.00 and a service award of $10,000.00 to each Named Plaintiff. The undersigned addresses each request below.

### A. Attorneys' Fees

Plaintiffs argue that the requested attorneys' fees are reasonable under both the common fund approach and the lodestar method. ECF No. [249] at 7-16. The undersigned recognizes that in evaluating the attorneys' fees requested, great weight is given to the Settlement Agreement given that the parties negotiated the amount at arm's length, and that the amount does not reduce the monies that will be available to the Settlement Class Members. *See e.g., James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.,* No. 07-cv-598, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (agreement as to amount of attorneys' fees "entitled to substantial

weight" where it was "not reached until after a settlement had been reached in principle on [the] other terms and … [it] was not the product of collusion or fraud." (citations omitted); *Foreman v. Solera Holdings, Inc.*, No. 17-cv-2002, 2019 WL 1880042, at *2 (M.D. Fla. April 11, 2019) ("[M]any courts have given substantial weight to the parties' agreement concerning attorney fees in class action settlements, especially where the agreement as to attorney fees and costs was made separately from the class settlement and does not diminish the benefits due the class.") (citation omitted).  For the reasons explained below, the undersigned concludes that the amount of attorneys' fees sought is reasonable.

> 1. **Common Fund**

Lawyers who recover a "common fund" are entitled to reasonable attorneys' fees from the fund they created. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).  In common fund class action settlements, "[b]oth the United States Supreme Court and the Eleventh Circuit have expressly approved calculating [attorneys'] fees by applying the percentage-of-recovery method to the total value of the settlement." *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *16 (S.D. Fla. April 13, 2016) (citing *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980), and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999)); *see Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("attorneys' fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class.").  The propriety of class counsel's fee award should also be considered in light of the value of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." *Poertner v. Gillette Co.*, 618 F. App'x. 624, 628 (11th Cir. 2015); *see David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. April 15, 2010) (settlement with ascertainable benefits may be treated as a

common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). Thus, class counsel fees in a common-benefit settlement are based on a reasonable percentage of the total benefit the settlement provides to the class. *Poertner*, 618 F. App'x. at 628 (citing *Camden I*, 946 F.2d at 774).

Generally, the benchmark for a reasonable class counsel fee is considered between twenty to thirty percent, i.e., twenty-five percent. *Camden I*, 946 F.2d at 774. This benchmark may be adjusted upwards or downwards based upon the individual circumstances of each case, or the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Camden I*, 946 F.2d 774–75; *Waters*, 190 F.3d at 1294 (affirming fee award of thirty-three and one third percent of a $50 million settlement, where the district court had used a thirty percent benchmark and adjusted it upwards). The *Johnson* factors are:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the issues;
>
> (3) the skill required to perform the legal service properly;
>
> (4) preclusion of other employment by the attorney due to acceptance of the case;
>
> (5) the customary fee;
>
> (6) whether the fee is fixed or contingent;
>
> (7) time limitations imposed by the client or the circumstances;
>
> (8) the amount involved and the results obtained;
>
> (9) the experience, reputation, and ability of the attorneys;
>
> (10) the "undesirability" of the case;
>
> (11) the nature and length of the professional relationship with the client, and
>
> (12) awards in similar cases.

*Johnson*, 448 F.2d at 717-19.

The requested attorneys' fees here constitute approximately 20.6% of the total benefit to the class, not including the value of Progressive's agreed prospective changes to its business practices. This percentage is below the 25% benchmark found reasonable in this Circuit, and is within the range of customary attorneys' fees. *See Camden I*, 946 F.2d at 774 (usual fee range for common fund cases is 20% to 30%, with 50% as the upper limit). It is also lower, as a percentage, than attorneys' fees awards in other common fund cases. *See e.g., Waters*, 190 F.3d at 1291 (affirming a thirty-three and one third percentage); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (recognizing that attorney's fees awarded in the Eleventh Circuit are "roughly one-third" of the benefit to the class) (collecting cases).

Further, in considering the *Johnson* factors, the Court notes that the time and labor required to litigate these cases was substantial (more than 7,300 hours), and included the production and review of a significant amount of discovery (tens of thousands of documents), more than a dozen depositions, and substantive motion practice, including *Daubert* motions and cross-motions for summary judgment. *See* ECF No. [249-1] at ¶¶ 10, 17-20, 41. The novelty and difficulty of the question involved also supports the requested fee award. At the time these actions were filed, only a handful of other cases around the country involved the legal issues here, some of which were matters of first impression. *Id*. at ¶ 42. Moreover, the skill required to successfully litigate this action, as well as the skill, experience, and expertise of Class Counsel, weigh in favor of Plaintiffs' requested fee award. Plaintiffs submitted evidence that Class Counsel had to forgo other potentially lucrative matters to litigate these cases. *Id*. at 44. In addition, Class Counsel prosecuted these cases on a contingency fee basis, *see* ECF No. [249-1] at ¶ 45, which posed a significant risk to counsel if the litigation was unsuccessful. Finally, the favorable results obtained by Class

Counsel also support the attorneys' fees sought. Progressive is agreeing to pay 100% of the sales tax owing and $55.50 in transfer fees, in addition to changing its business practices regarding calculation of Total Loss Claim Payments going forward. *See* ECF No. [247-1] at ¶¶ 32-34, 69. Therefore, for the reasons stated herein, the undersigned finds that Plaintiffs' requested amount of $10 million in attorneys' fees is reasonable under the common fund approach.

### 2. The Lodestar Method

As Plaintiffs recognize, "[u]nder *Camden I*, courts in this Circuit regularly award fees based on a percentage of recovery, without discussing lodestar at all." *Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 WL 2012366, at *7 (S.D. Fla. May 20, 2021). However, courts often "use the lodestar method as a cross-check of the percentage of the [class benefit] approach." *Ressler v. Jacobson*, 149 F.R.D. 651, 654, n.4 (M.D. Fla. 1992). Thus, Plaintiffs argue that their requested attorneys' fees are also appropriate under the lodestar method with a multiplier.

The lodestar "is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation omitted). With respect to the first step in the lodestar analysis, the fee applicant must "present records detailing the amount of work performed" so that the Court can accurately assess the labor involved." *See Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985). Class counsel has done so here. With respect to the second step in the lodestar analysis, Florida courts evaluate the reasonableness of the hourly rate(s) requested using the same factors set forth in *Johnson*. *See Rowe*, 472 So. 2d at 1150-51. The undersigned's discussion of the *Johnson* factors detailed above is therefore incorporated herein.

It is well established that a "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  It is also well established that in evaluating the reasonableness of a fee request, the Court may consider its own knowledge and expertise to determine a reasonable hourly rate.  *See Norman*, 836 F.2d at 1303; *see also Maner v. Linkan LLC*, 602 Fed. App'x 489, 493 (11th Cir. 2015) (the district court "is itself an expert on the question [of reasonable hourly rates in the local market] …and may form an independent judgment either with or without the aid of witnesses as to value.") (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).  With respect to a multiplier, Florida courts have evaluated the reasonableness of attorneys' fees in class actions using the lodestar plus a multiplier of up to 5.0.  *See Kuhnlein v. Dep't of Revenue*, 662 So.2d 309, 315 (Fla. 1995) ("[W]e set the *maximum* multiplier available in this common-fund category of cases at 5). "Multipliers were specifically designed to enhance the amount of attorney fees awarded based on the contingency risk factor and the results obtained." *Id*. at 313 (citing *Rowe*, 472 So. 2d at 1151).

The billing records submitted reflect a lodestar of approximately $5 million based upon 7,438.50 hours.  *See* ECF No. [252] at ¶ 6.  Based on the Court's review of the Class Counsel's billing records, the supporting materials presented with the Motion, and its own familiarity with prevailing market rates for similar legal services by lawyers of comparable skill, the hourly rates and hours worked are reasonable.  In addition, the requested multiplier of 1.97, ECF No. [252] at ¶ 6, is below the low end of those approved in other class actions.  *See e.g., SOS v. State Farm Mutual Auto. Ins. Co.*, No. 17-cv-890, 2021 WL 1186811, at *7 (M.D. Fla. March 19, 2021) (finding multiplier of 2.5 in class action "is appropriate to achieve the policy rationale of

8

incorporating a reasonable incentive to an attorney to take the case in the first place.") (quotation marks and citation omitted); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be the average[,]"and finding that requested attorneys' fees of $1,275,000.00 were reasonable when "cross-check[ed]" against lodestar method). For these reasons, the undersigned finds that Plaintiffs' request for $10 million in attorneys' fees is reasonable. Accordingly, Plaintiffs' request for attorneys' fees in the amount of $10 million should be approved, and **RECOMMENDS** that the Motion as to attorneys' fees be **GRANTED**.

### B.  Costs and Expenses

Plaintiffs request that the Court award up to $480,000.00 in litigation costs and expenses. Plaintiffs submitted a breakdown of the costs and expenses incurred, and supporting invoices where available, which total well in excess of the $480,000.00 requested. ECF Nos. [252] at ¶ 3; [252-1]. The undersigned has reviewed the documentation submitted, and finds that Plaintiffs incurred at least $480,000.00 in reasonable costs and expenses, which were necessarily incurred in furtherance of this litigation and the Settlement. As with Class Counsel's attorneys' fees, Progressive's payment of costs will not reduce the amount available to Settlement Class Members. Accordingly, the undersigned concludes that Plaintiffs' request for costs and expenses in the amount of $480,000.00 should be approved, and **RECOMMENDS** that the Motion as to costs and expenses be **GRANTED**.

### C.  Service Award

Plaintiffs seek approval of a $10,000.00 service award for each Named Plaintiff. This Court previously approved a service award under nearly identical circumstances. *See Roth v. GEICO General Ins. Co.*, No. 16-cv-62942, 2020 WL 10818393, at *3 (S.D. Fla. Oct. 8, 2020)

(report and recommendation adopted by *Roth*, Case No. 16-cv-62942-Dimitrouleas/Snow at ECF No. [375] (S.D. Fla. Feb. 8, 2021) (approving $10,000.00 incentive award to each named plaintiff). In light of the *Roth* decision, and considering that the service awards will be paid separate and apart from payments to Class Members, the undersigned finds that the requested service awards are warranted. Accordingly, the undersigned concludes that Plaintiffs' request for service awards in the amount of $10,000.00 to each Named Plaintiff should be approved, and **RECOMMENDS** that the Motion as to service awards be **GRANTED**.

### III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards, ECF No. [249], be **GRANTED** and that Plaintiffs be awarded $10 million in attorneys' fees, $480,000.00 in costs and expenses, and a $10,000.00 service award to each Named Plaintiff.

### IV. OBJECTIONS

A party shall serve and file written objections, if any, within **THREE (3) DAYS** of being served with this Report and Recommendation. The undersigned finds that a shortened objection period is warranted given that the Motion is being granted in its entirety, it was unopposed, and no objection to the settlement has been filed. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND RECOMMENDED** in Chambers in Miami, Florida on March 20, 2023.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

11